UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - -- - - - - - - -- X

**UNITED STATES OF AMERICA,**

      Plaintiff,

*ex rel.* **RELATOR LLC**, a California limited liability company,

      Relator,

    v.

**SANTO PETROCELLI JR,** an individual; **WILLIAM BROWN**, an individual; **SAIDS, LLC,** a New Jersey limited liability company, **ALLAN BRITEWAY ELECTRICAL UTILITY CONTRACTORS INC**, a New Jersey corporation, **ALLAN BRITEWAY ELECTRICAL CONTRACTORS INC.**, a New Jersey Corporation, and DOES 1-10,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - -- - - - - -- -X

Case No.

**COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT**

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**JURY TRIAL DEMANDED**

Plaintiff RELATOR LLC ("Plaintiff") complains of **SANTO PETROCELLI JR,** an individual ("Petrocelli"), **WILLIAM BROWN**, an individual ("Brown"), **SAIDS, LLC,** a New Jersey limited liability company ("AB Parent"), **ALLAN BRITEWAY ELECTRICAL UTILITY CONTRACTORS INC**, a New Jersey corporation ("AB Utility"), **ALLAN BRITEWAY ELECTRICAL CONTRACTORS INC.**, a New Jersey Corporation ("AB Electrical"), and DOES 1-10.

## JURISDICTION & VENUE

1. This Court has subject matter jurisdiction over the Plaintiff's claims brought under the FCA, 31 U.S.C. §§ 3279, et seq., pursuant to 31 U.S.C. §§ 3730 and 3732. This Court has supplemental jurisdiction to entertain the common law and equitable causes of action under 28 U.S.C. § 1367(a).

2. Plaintiff The United States of America is also located in the Southern District of New York. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because at all times material hereto, Defendants transacted business and are located in the Southern District of New York, and acts proscribed by 31 U.S.C. § 3729 occurred in this district.

3. Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a), because the Defendant's acts that form the basis of this Complaint occurred in the Southern District of New York.

4. Relator's claims and this Complaint are not based upon prior public disclosures of allegations or transactions in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other federal report, hearing, audit, or investigation; or from the news media. To the extent that there has been a public disclosure unknown to Relator, it is the "original source" within the meaning of 31

1

U.S.C. § 3730(e)(4)(B) and/or the public disclosure is a result of Relator voluntarily providing this information to the United States Government prior to filing this *qui tam* action.

## INTRODUCTION AND SUMMARY

5.  In this matter the owners and managers of an electrical contracting business misappropriated millions of dollars from the US Federal government's Paycheck Protection Program ("PPP"). In order to obtain the loans, the Defendants submitted falsified loan documents to the SBA. Defendants made false statements to obtain more than the amounts permitted under the program, and falsified the number of employees on payroll. Defendants did not have any economic need for the loan, they simply took advantage. Defendants had no economic need for payroll assistance, assuming the loan was used on payroll. Defendants falsified additional documents which were presented to the government to obtain total loan forgiveness, billing millions to the US taxpayer.

6.  The defendants used their electrical contracting business, AB Utility, to apply for and receive a PPP loan totaling $7,029,810.00, purportedly to cover payroll costs ("PPP Loan 1").

7.  The defendants then used their electrical contracting business, which is the same business, just operating under a different name, AB Electrical, to apply for and receive a second PPP loan totaling $10,000,000.00, purportedly to cover payroll costs ("PPP Loan 2", together with PPP Loan 1, hereinafter collectively, the "PPP Loans"). However, AB Utility and AB Electrical, and the individual defendants who controlled the borrowers:

   a.  Falsified loan eligibility;

   b.  Falsified number of jobs;

   c.  Violated $100,000 payroll cap;

   d.  Violated $10,000,000 loan cap;

2

e.     Received two (2) PPP loans for the same business;

f.     Falsified the use of the loans on authorized expenses;

g.     Falsified the economic necessity for the loans; and

h.     Falsified eligibility for loan forgiveness.

8.     <u>Falsified Loan Eligibility</u>. AB Utility and AB Electrical are different entities for the same exact business. They are not separate businesses eligible to receive separate PPP loans, however, defendants mislead the SBA to believe that AB Utility and AB Electrical are separate businesses and therefore eligible for separate PPP loans. This is not the case. AB Utility and AB Electrical are both wholly-owned subsidiaries of SAIDS LLC. Relator is informed and believes that Santo Petrocelli Jr. wholly owns and controls SAIDS LLC. Relator is informed and believes that Santo Petrocelli Jr. is the Chief Executive Officer and/or President of each of AB Utility and AB Electrical, and that William Brown is the chief financial officer of both entities. AB Utility and AB Electrical have substantially identical business purpose and operations. Relator is informed and believes that AB Utility and AB Electrical share employees. Relator is informed and believes that AB Utility and AB Electrical maintain access to comingled assets, such that assets purportedly belonging to AB Utility have been used to pay AB Electricals' debt. Relator is informed and believes that AB Utility and AB Electrical fail to observe corporate formalities. Relator is informed and believes that AB Utility is a disguised continuance of AB Electrical.

9.     <u>Falsified Number of Jobs Reported</u>. On the loan application for PPP Loan 1, AB Utility claimed to have 217 employees. On the loan application for PPP Loan 2, AB Electrical claimed to have 275 employees. AB Utility and AB Electrical, together claimed to have a combined total of 492 employees. AB Utility and AB Electrical are the same business that share employees, and did not have a combined total of 492 employees, The defendants grossly

exaggerated and falsely stated the number of employees that they had in order to maximize the amount of loan proceeds that they misappropriated from the government.

10.    Violated $100,000 Payroll Cap. On their loan applications, Defendants claim to have needed the loans to pay for 217 employees with respect to PPP Loan 1 and 275 employees with respect to PPP Loan 2. However, the loan amounts obtained by Defendants with respect to both loans are exorbitantly above the $100,000 annual payroll cap. It is important to note that PPP loans to pay for owner/partner draws and distributions are absolutely not allowed. The rules explaining that any payroll costs over $100,000 are not permitted are clearly stated in the loan applications. AB Utility received a $7,029,810.00 PPP Loan, and certified that 100% of it was to be used for payroll expenses, which equates to an average annual salary of **$157,283.13**[1], which is a clear and obvious violation of the $100,000 salary cap. AB Electrical received a $10,000,000.00 PPP Loan, and certified that 100% of it was to be used for payroll expenses, which equates to an average annual salary of **$177,596.41** [2], which is a clear and obvious violation of the $100,000 salary cap.  Petrocelli and Warner, as the executives at AB Utility an AB Electrical, used US taxpayer dollars to pad their inflated salaries, while actual American small businesses suffered.

11.    Violated $10,000,000 Loan Cap/Received 2 PPP loans for the same business. The maximum amount available to any business in the PPP was $10,000,000.00, however, by disguising AB Utility and AB Electrical as two (2) separate businesses, the Defendants mislead the SBA to provide at least $7 million more than the defendants would have been entitled to had they not falsely presented AB Utility and AB Electrical as separate businesses. AB Electrical and

---

[1]The calculation is as follows (Loan Amount/#of employees) * 4.8)), which equals ($7,029,810.00/217) * 4.8

[2]The calculation is as follows (Loan Amount/#of employees) * 4.8)), which equals ($10,000,000.00/275) * 4.8

AB Utility are one business. This is also a violation of the Single Loan Certification (defined below) wherein the defendants certified that from February 15, 2020 through December 31, 2020, they would not receive another loan under the PPP.

12.     No Economic Necessity. The PPP was made to help struggling businesses which were unsure about being *able* to pay their workers. The SBA required that the COVID pandemic caused enough economic uncertainty such that company payroll was jeopardized. That is a distinct standard. The business must have been in trouble to the point where its most important resource, its people, were not affordable any longer. The PPP was not a free excuse to raid government coffers by wealthy businessmen. The defendants did not need the loans -- there was no "need" or "economic necessity" to pay Defendant's payroll expenses. Not only did the defendants not need the loans, but it was also evident from the outset of the pandemic that electrical contractors, like defendants, would thrive financially. Electrical contractors, like defendants, unlike bars or restaurants, were deemed to play a vital role in maintaining and repairing essential infrastructure, such as power grids, hospitals, and telecommunication networks. These services were deemed crucial during the pandemic, ensuring that communities could function and that people had access to essential services. As a result, electrical contractors were in high demand and able to secure lucrative contracts, ensuring their financial stability, and it was clear at the very outset of the pandemic that there would be no business interruption for defendants, and, in fact, that their business would increase. Furthermore, the pandemic forced businesses and individuals to adapt quickly to remote work and digital solutions. It was clear at the outset of the pandemic that with the increased reliance on technology, there would be a surge in demand for electrical contractors to install, upgrade, and maintain electrical systems, networks, and equipment necessary for remote work. From setting up home offices to establishing robust network connections, electrical

contractors were able to take advantage of business opportunities to facilitate the digital transformation, making their services indispensable. With the increased demand for their services, claiming economic necessity to secure the PPP Loans meant that defendants knowingly took advantage of a system meant for those genuinely in need. The Defendants did not and cannot show any decline in revenue during the pandemic, much less a decline so bad it threatened worker pay. Yet Defendants falsely certified they had "economic uncertainty" so they could take financial assistance from the US taxpayer.

13.    <u>Money Not Returned</u>. The loans were taken by a business which was not allowed to take even one penny in loans, let alone millions of dollars. However, at some point the defendants could have changed course. They could have returned the money. They did not. They doubled down on their misappropriation by seeking loan forgiveness. The $17,029,810.00 in funds should have been returned immediately. These loans should never have been sought in the first place. Yet the Defendants went further by obtaining total loan forgiveness, billing the US taxpayers millions of dollars. *Defendants have not returned the loan proceeds to this day*.

14.    <u>Further Falsification on Loan Forgiveness</u>. Defendants falsified further documents to receive loan forgiveness. Defendants had to attest as to the use of the funds and the amount used on authorized purposes. They were not because Defendants could not comply with the requirements of forgiveness given their ineligibility, exorbitant amounts borrowed and false statements regarding numbers of employees, separate identities of the two borrower entities and violations of the loan amount cap and salary cap. So, Defendants also lied on their forgiveness documents and application.

15.    <u>Defendant's False Statements and Fraud</u>. Defendants knowingly and intentionally made many materially false statements to the government and bank to obtain the loans.

16.     Plaintiff brings this action as relator on behalf of the United States to recover treble damages, civil penalties, and costs under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33 Plaintiff gave notice of its intent to file and full disclosure of the evidentiary basis to the Department of Justice ("DOJ").

### THE PARTIES

17.     Plaintiff is a California limited liability company with its principal place of business in Los Angeles County, California.

18.     Defendant Santo Petrocelli Jr. is an individual and, at all relevant times herein, is and was the Chief Executive Officer of AB Utility and AB Electrical.

19.     Defendant William Brown is an individual and, Relator is informed and believes that at all relevant times herein, he is and was the Chief Financial Officer of AB Utility and AB Electrical.

20.     Defendant AB Utility is a corporation formed in New Jersey with its principal place of business located at 130 Algonquin Pkwy, Whippany, New Jersey, 07981-1602.

21.     Defendant AB Electrical is a corporation formed in New Jersey with its principal place of business located at 228 E 45th St 9th Floor, New York, New York, 10017-3303.

22.     Defendant SAIDS LLC is a limited liability company formed in New Jersey with its principal place of business located at 40 Birch Lane, Short Hills, New Jersey, 07078.

23.     AB Utility and AB Electrical are electrical contractors.

24.     The true names and capacities, whether individual, partner, associate, corporate or otherwise, of Defendant DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiff, who therefore sues said Defendant(s) by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each Defendant designated herein as a "DOE" is legally responsible in

some manner for the events and happenings herein mentioned.  Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of said DOES, and add appropriate charging allegations against said DOES when their identities have been ascertained.  Plaintiff is informed and believes that each of the DOE Defendants were responsible in some manner for the injuries and damages alleged herein, and/or for the wrongful acts of some or all of the Defendants.

25.    Plaintiff is further informed and believes that each of the Defendants, whether specifically named or named as a DOE, was an agent, employee, servant and/or representative of each of the remaining Defendants, and, in doing or failing to do the things alleged herein, was acting within the course and scope of said agency, employment, service and/or representation.

26.    Plaintiff is further informed and believes that each of the Defendants, whether specifically named herein or named as a DOE, approved, ratified and/or acquiesced in the acts and omissions of each of the remaining Defendants.

27.    Plaintiff is further informed and believes that each of the Defendants herein, whether named as DOES or otherwise, acted in concert, agreement and conspiracy with the other Defendants for the common purpose of engaging in a scheme to defraud as alleged below.

### THE CARES ACT AND PAYCHECK PROTECTION PROGRAM

28.    On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act" or "the Act") (Pub. L. 116-136) became law and provided emergency assistance and health care response for eligible individuals, families, and businesses affected by the coronavirus pandemic. SBA received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

29.    The CARES Act authorized loans to eligible small businesses struggling to pay

8

employees and stay in business as a result of the devastating effect of the COVID-19 pandemic and resulting restrictions.

30.    Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program" ("PPP").

31.    On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139) was enacted to provide additional funding and authority for the PPP. On June 5, 2020, the PPP Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116-142) was enacted, changing key provisions of the PPP, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans.

32.    Under the PPP, in 2020, eligible businesses could obtain one SBA guaranteed PPP loan. Businesses were required to spend all loan proceeds only for employee compensation, rent or mortgage, and certain other specified expenses. Depending on their use of the loan proceeds as certified, they could qualify for loan forgiveness, up to the full amount of the loan.

33.    The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. In order to obtain a PPP loan, whether a "First Draw" or "Second Draw" loan, an eligible business (through its authorized representative) had to sign and submit a PPP loan application (SBA Form 2483) online through the lender's platform. The PPP loan application (SBA Form 2483) required the business (through its representative) to acknowledge the PPP program rules and make certain certifications in order to be eligible to obtain the PPP loan, including certifying that their certifications were true.

34.    Once the Borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA

9

Form 2483) was approved by the lender, it funded the PPP loan with its own funds, which were 100% guaranteed by the SBA.

35.     After the Lender processed and approved a borrower's PPP loan application (Form 2483), but prior to the closing of the PPP loan, the Lender submitted to the SBA, the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) to the SBA applying for a guarantee on the loan. For a PPP loan to be approved, the Lender was required to Answer Yes to the following questions in the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) as to the Borrower's certification of its General Eligibility to receive a PPP Loan:

| | | | |
|---|---|---|---|
| • | The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099MISC; (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant; (3) the funds will be used to retain workers and maintain payroll, or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures; and (4) the Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)). | ☐ Yes | ☐ No |

SBA Form 2484 (emphasis added). Therefore, if a PPP borrower lied on its PPP loan application (SBA Form 2483), the PPP borrower's false certification caused the Lender to submit to the SBA with respect to that PPP Loan, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained the PPP borrower's False Statement.

10

36.    SBA Form 2483 includes the following certification, among others: "I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them" (the "Understanding Certification").

37.    SBA Form 2483 also includes the following certification, among others: "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)" (the "Eligibility Certification").

38.    SBA Form 2483 also includes the following certification, among others "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule" (the "Use of Proceeds Certification").

39.    SBA Form 2483 also includes the following certification, among others: "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant" (the "Economic Necessity Certification").

40.    SBA Form 2483 also includes the following certification, among others: "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud" (the "Worker Retention and Payroll Certification").

41.    SBA Form 2483 also includes the following certification, among others: "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has

11

not and will not receive another loan under the Paycheck Protection Program." (the "Single Loan Certification").

42.     SBA Form 2483 also includes the following certification, among others: "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000" (the "No False Statements Certification").

43.     After the borrower submitted a PPP loan application, it was processed by the participating lender. If the PPP loan application was approved, the participating lender funded the loan using its own monies, which were then guaranteed by the SBA. Generally, in the event the borrower defaulted on a PPP loan, the SBA would purchase the borrower's debt from the lender and be responsible for its repayment.

44.     Under applicable SBA rules and guidance, recipients of PPP loans could apply to have principal and interest on the PPP loan fully forgiven, meaning that the borrower would owe nothing and would have no obligation to repay the PPP loan. To obtain full forgiveness of the PPP loan, borrowers had to attest that they had "not reduced the number of employees or the average paid hours of [their] employees" during the loan period, that the loan proceeds had been spent on payroll costs and other permitted expenses and that at least 60% of the loan proceeds had been spent on payroll costs (hereafter the "Loan Forgiveness Certification").

45. Loans could only be used for certain permitted expenses, such as to pay employees' salaries, employee benefits, mortgage interest, rent, utilities or worker protection costs related to COVID19.

46. More specifically, the loan forgiveness application (SBA Form 3508), revised as of July 30, 2021, included the following certifications, among others:

(1) The dollar amount for which forgiveness is requested:

- was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);

- includes all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;

- includes payroll costs equal to at least 60% of the forgiveness amount;

- if a 24-week Covered Period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual; and

- if the Borrower has elected an 8-week Covered Period, does not exceed 8 weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual.

(2) I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

(3) The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

(4) The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application.

47. On April 23, 2020 in FAQs No. 31, the SBA reiterated that the economic necessity certification must be made in good faith and that publicly traded companies are not likely to be able to make that certification in good faith, stating "it is unlikely that a public company with substantial market value and access to capital markets will be able to make the required certification in good faith…"

**DEFENDANTS' FRAUD**

48. During round 1 of the PPP, Defendant AB Utility applied for a PPP loan for $7,029,810.00. It was approved on April 15, 2020, by the SBA for the full amount, which was disbursed. The loan was facilitated by Provident Bank. Defendant received 100% of the approved amount. On its application for this loan, Defendant stated that it had 217 employees for which it needed the loan. This loan was forgiven on June 15, 2021.

49. During round 1 of the PPP, Defendant AB Electrical applied for a PPP loan for $10,000,000.00. It was approved on April 15, 2020, by the SBA for the full amount, which was disbursed. The loan was facilitated by Provident Bank. Defendant received 100% of the approved amount. On its application for this loan, Defendant stated that it had 217 employees for which it needed the loan. This loan was forgiven on January 21, 2022.

50. The Defendants knew when they claimed that AB UTILITY had 217 employees and that AB Electrical had 275 employees that such statements were false. AB Utility and AB Electrical shared employees so when they made these statements about the total number of employees they had, with the knowledge that some of the employees were being double-counted

14

on the other borrower's application, the statements were false and the Defendants knew that they would not be eligible to obtain PPP loans with respect to such employees.

51.    Defendants AB Utility and AB Electrical are one business. However, Defendants falsely treated these two entities as two separate businesses and applied for and received two separate, massive first-round, PPP loans, equaling more than $17 million. They engaged in this fraud, even though as sophisticated businessmen, they knew that at most they would only be allowed to receive only one first round PPP loan. Moreover each of the PPP Loans violated the $100,000 salary cap by a sizeable margin, with PPP Loan 1 being 57% over the limit and PPP Loan 2 being 77.5% over the limit. These false statements were intentional and not an accident.

52.    In addition to providing the correct numbers of employees, all borrowers should carefully review the required Economic Certainty certification on the Borrower Application Form stating that ''[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.''

53.    AB Utility and AB Electrical abused the PPP program, from misrepresenting their economic need for the loan to willfully ignoring their ineligibility, to maximizing the amount of the loans and then obtaining loan forgiveness. Discovery will reveal where the millions in PPP funds were actually spent, but what is obvious is that Defendants *did not need any money from US taxpayers*. The Defendants' business is and was highly profitable during the pandemic, just like most in their industry. They did not suffer any business loss and certainly had the money to pay their own worker wages.

54.    Defendants signed the loan applications, thereby endorsing the Understanding Certification, which means that they agreed that they understood the rules and guidelines of the PPP, including, without limitation the rules regarding use of proceeds and the certifications made.

55.    The proceeds of the PPP Loans were not and could not have been used only for authorized purposes consistent with the PPP Rule, because, among other things, AB Utility and AB Electrical are one business and would only be eligible to at-most one, first round PPP loan, therefore any money they received that they were not eligible to receive could not have been used for authorized expenses. Furthermore, the Defendants received excessive amounts, far beyond the $100K salary cap on each of the PPP Loans, therefore, such excess money could not have been used on authorized expenses, since the amounts did not confirm with the PPP Rule. Accordingly, when Defendants made the Use of Proceeds Certification, the certification was false.

56.    The proceeds of the PPP Loans were not necessary to support the ongoing operations of the Defendants' electric contracting business. The business was nowhere near a financial precipice. Far from it. The business had considerable financial resources to pay its own workers, assuming that is where the money was spent rather than into the pocket of the CEO and its executives. Therefore, when Defendants made the Economic Necessity Certification, the certification was false.

57.    The PPP loan money was only allowed to be used on *authorized* expenses. The proceeds of the PPP Loans were not permitted to be used to pay for the very much affordable business costs for the Defendants' successful electrical contracting business, therefore when Defendants made the Worker Retention and Payroll Certification, the certification was false.

58.    By virtue of the above false statements, when Defendants made the No False Statements Certification, that certification was false.

59.    The Defendants actively pursued and obtained loan forgiveness. Because the Defendants obtained multiple loans for the same business and were prohibited from doing so, its representation on its forgiveness application that it spent 100% of the loan proceeds on eligible

16

expenses was not truthful. The SBA would not have forgiven the loans if they knew Defendants' certifications described above were false.  They also would not have forgiven the loans if they knew the proceeds had been used to increase profits instead of paying their employees.

60.    As a result of the forgiveness, Defendants have not repaid the loan and have kept the proceeds, and the loan has been repaid with money from taxpayers, including the small businesses and owners who were supposed to receive the PPP funds instead of repaying a profitable electrical contracting business's loans that it never should have received, let alone had forgiven.

### THE FALSE CLAIMS ACT

61.    The False Claims Act prohibits fraudulent conduct in connection with federal programs, including the knowing submission of false claims for payment to the government. See 31 U.S.C. § 3729(a)(1)(A). In these circumstances, liability may attach if the omission renders those representations misleading. 41. 31 U.S.C. § 3729(a)(1)(A) and (B) of the FCA provide that:

(1) . . . any person who—

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim,

. . .

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money

17

or property to the Government, is liable to the United States Government . . .

31 U.S.C. § 3729(a)(1)(A), (B), and (G) (2020).

42. The scope of a false or fraudulent claim is to be broadly construed. As used in the FCA, a "claim"

(A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—

(i) is presented to an officer, employee, or agent of the United States; or

(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

(I) provides or has provided any portion of the money or property requested or demanded; or

(II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; . . .

31 U.S.C. § 3729(b)(2) (2020).

62.     A person who violates the False Claims Act during the time period at issue "is liable for a civil penalty as adjusted, plus 3 times the amount of damages which the United States Government sustains because of the act of that person." 31 U.S.C. § 3729(a). See 28 C.F.R. § 85.3(a)(9); Department of Justice, 28 CFR Part 85, Civil Monetary Penalties Inflation Adjustments for 2022 published at: https://www.govinfo.gov/content/pkg/FR-2022-05-09/COMMERCE/2022-09928.COMMERCE.

## FIRST CAUSE OF ACTION

## FALSE OR FRAUDULENT CLAIMS (31 U.S.C. § 3729(a)(1)(A-B))

63.     Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

64.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended.

65.     By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A). Specifically, each of Defendants' Economic Necessity, No False Statements, Eligibility, Use of Proceeds, Understanding, Worker Retention and Payroll Certifications described above all were knowingly false, and relied upon by lenders and the SBA in approving the PPP Loans.  Their request for forgiveness contained a further misrepresentation that the loans had been used only for authorized purposes.

66.     By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

67.     The Government and its agents and contractors relied on those false statements in approving and making the loans and subsequently forgiving them, leaving the burden of repayment on taxpayers.

68.     Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $12,537.00 and not more than $25,076.00 for each and every violation

19

arising from Defendants' unlawful conduct alleged herein, and attorneys' fees in an amount to be proven.

## CONCLUSION

69.     Jack Allen and his company abused the PPP. The PPP was meant for businesses struggling to afford payroll. Now that program is dry, and many are out of work. The American people have a right to reconciliation.

## PRAYER FOR RELIEF

WHEREFORE, qui tam Plaintiff/Relator prays for judgment against Defendants, as follows:

1. That this Court enter judgment against each Defendant in an amount equal to three times the damages that the United States has sustained because of Defendants' action, plus a civil penalty of not less than $12,537.00 and not more than $25,076.00 for each and every false claim as are required by law, together with all such further relief as may be just and proper.

2. Such other relief as this Court may deem just and proper, together with interest and costs of this action.

3. Reasonable attorney fees, litigation expenses, and costs of suit.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 2, 2024

Respectfully submitted,

David L. Hecht
HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, NY 10017
(646) 502-9515
(857) 557-5204
(646) 396-6452
(646) 777-2489
dhecht@hechtpartners.com

Attorneys for Plaintiff-Relator
RELATOR LLC

21